UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>CATHERINE E. SMITH,<br><br>Debtor. | Case No. 18-23830(JNP)<br><br>Chapter 13<br><br>Judge: Jerrold N. Poslusny, Jr. |

### MEMORANDUM DECISION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

The primary issue in this matter is whether a debtor can include post-petition mortgage arrears in a Chapter 13 modified plan. PHH Mortgage Corporation ("PHH"), as the servicer,[1] filed a certification of default seeking relief from the automatic stay to proceed with a foreclosure complaint. Catherine Smith ("Debtor") opposed the certification of default and then filed a modified Chapter 13 plan (the "Modified Plan") proposing to cure the post-petition arrears through the Modified Plan. PHH objected to the Modified Plan. Because this Court determines the Modified Plan may include post-petition arrears, it will be confirmed and the automatic stay will remain in place with conditions.

### I. Background

On July 10, 2018, Debtor filed a petition for relief (the "Petition Date") under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). Dkt No. 1. Debtor's original Chapter 13 plan (the "First Plan") was confirmed on September 21, 2018. Dkt. No. 2, 14. The First Plan provides for Debtor to cure pre-petition arrears and to make ongoing mortgage payments directly to Ocwen Loan Servicing ("Ocwen").[2] When Debtor defaulted on post-petition payments,

---

[1] The mortgage holder is HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-D, Mortgage-Backed Certificates, Series 2005-D ("HSBC").
[2] Ocwen was the servicer for HSBC on the Petition Date. Dkt. No. 2.

Ocwen filed a motion for relief from the automatic stay, which Debtor opposed. Dkt. Nos. 16, 17. On January 22, 2019, this Court entered its first consent order (the "First Consent Order"), resolving the stay relief motion and requiring Debtor to cure the post-petition arrears. Dkt. No. 22.

When Debtor failed to comply with the First Consent Order, PHH, which replaced Ocwen as servicer, filed a certification of default. Dkt. No. 27. This Court entered a second consent order to cure the defaults (the "Second Consent Order").[3] Dkt. No. 32. Approximately two years later, after Debtor defaulted again, PHH filed a second certification of default seeking stay relief. Dkt. No. 35. Pursuant to the second certification of default, the post-petition arrears totaled $21,372.75. Id. Debtor's certification in opposition stated that her husband lost his job due to the COVID-19 pandemic, but maintained she was current with payments to the Trustee under the First Plan. Dkt. No. 36. Debtor further requested to pay post-petition arrears through the First Plan. Dkt. No. 36.

Shortly thereafter, Debtor filed the Modified Plan seeking to incorporate the post-petition arrears and extend the plan length to 73 months. Dkt. No. 44. At a hearing on March 3, 2021, PHH objected to the Modified Plan and the Court asked the parties to brief the following issues: (1) whether a modified plan may provide for curing of the post-petition mortgage arrears; (2) if the arrears may be cured in a modified plan, should they be treated as an administrative expense;[4] and (3) whether the Modified Plan meets the other requirements of the Bankruptcy Code.

Debtor argues: the majority of courts adopt a plain meaning analysis of section 1322(b)(5) of the Bankruptcy Code to allow modifications to cure post-petition arrears; a case-by-case analysis is applied to determine whether the proposed cure is within a reasonable time period; and the Modified Plan is in accordance with sections 1322, 1325, and 1329 of the Bankruptcy Code. Dkt. No. 55. Debtor's supporting certification further explains her husband's work troubles for the

---

[3] The Second Consent Order required the Debtor to continue regular monthly mortgage payments and directly pay PHH monthly cure payments. Dkt. No. 32.

[4] Because the proposed payments in the Modified Plan are effectively paid at the same level as administrative expenses, the Court need not to decide whether those payment must be treated as such.

2

past three years and the personal, emotional, and financial hurdles COVID-19 imposed onto her family. Dkt. No. 53. Debtor states they both are in the food service industry, but they remain optimistic of improved finances with the rollout of the COVID-19 vaccine. Id. Debtor also states that she consents to a wage order to guarantee mortgage payments and has made appropriate changes to her budget to make future payments under the Modified Plan. Id. Debtor was current on Trustee payments through March 2021. Id.

PHH argues Debtor is not afforded the absolute right to include all post-petition arrears in a plan under sections 1322(b)(5) and 1329 of the Bankruptcy Code, and questions whether the Modified Plan complies with the requirements of good faith, feasibility, and reasonableness of extending the length of payments. Dkt. No. 57. PHH notes that this is Debtor's third default, two of those before COVID-19, while previously having $550 per month of disposable income. Debtor's amended schedules show $0.12 per month of disposable income. Id. Furthermore, PHH argues it is unreasonable to extend the plan an additional 37 months when Debtor has not been able to stay current on post-petition mortgage payments since the Petition Date. Id. PHH also argues that if the Modified Plan is not confirmed, it should receive stay relief to proceed with its state law remedies.

A joint hearing with In re Jackson (Case No. 20-13883) was held on April 7, 2021, (the "Hearing"), at which the parties reiterated their arguments. At the Hearing, PHH conceded that if post-petition arrears were allowed to be included in the Modified Plan over PHH's objection, the Modified Plan is feasible and therefore confirmable. The Trustee did not object, believing the Modified Plan is feasible based on the amended schedules, the post-petition arrears can be included in the Modified Plan, and the Modified Plan meets all requirements of confirmation. The Court considered all of the arguments made at the Hearing and took this matter under advisement.

## II. Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 157(b)(1) and 1334(b). Venue is proper in this Court under 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (G), (L), and (O).

## III. Discussion

The Court is asked to consider whether curing post-petition mortgage arrears may be included in the Modified Plan. While courts are split as to whether to allow such a cure, this Court adopts the reasoning of the Fifth and Eleventh Circuits to allow a modified plan to incorporate and cure post-petition arrears in accordance with sections 1322 and 1329 of the Bankruptcy Code if all other requirements for confirmation are met. See Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle), 12 F.3d 1008 (11th Cir. 1994); Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza), 111 F.3d 1264, 1268 (5th Cir. 1997).

### A. Modification of a Chapter 13 Plan

Section 1329(a) of the Bankruptcy Code permits a debtor, trustee, or the holder of an unsecured claim to request post-confirmation modifications to a Chapter 13 plan before completion of payments under the plan. In re Mellors, 372 B.R. 763, 769 (Bankr. W.D. Pa. 2007). The proponent of a plan modification bears the burden of proof that the statutory requirements have been met. In re Eckert, 485 B.R. 77, 80 (Bankr. M.D. Pa. 2013) (citing In re Robenhorst, 2011 WL 1434696, at *1 (Bankr. E.D. Wis. 2011); In re Coay, 2012 WL 2319100, at *7 (Bankr. C.D. Ill. 2012)); see also, 8 Collier on Bankruptcy ¶ 1329.03. Section 1329 of the Bankruptcy Code states, in relevant part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments;
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan;
>
> \* \* \*
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329.

Additionally, section 1325(a) includes what is often referred to as the feasibility requirement. Namely, a modified plan can only be confirmed if "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6); see also Eckert, 485 B.R. at 84-85. The court must determine whether the debtor has the present, as well as the future, financial capacity to comply with the terms of the plan. In re Buccolo, 397 B.R. 527, 530 (Bankr. D.N.J. 2008). Feasibility requires a showing that, "it is likely that the debtor will have the necessary resources to make all payments as directed by the plan." In re Asken, 2007 WL 1056724, at \*3 (Bankr. E.D. Pa. 2007).

The Modified Plan satisfies the Bankruptcy Code requirements. Debtor's request comes after confirmation, but before completion of the First Plan payments. See 11 U.S.C. § 1329(a). The Modified Plan proposes to: (1) decrease, then increase, the payments from $651 monthly to $601 monthly for two months, then $651 monthly for four months, then $688 monthly through the end of the Modified Plan; (2) extend the plan length from 36 months to 73 months; and (3) increase

5

the distribution to PHH by incorporating the payment of $22,712.15 post-petition arrears.[5] See 11 U.S.C. § 1329(a)(1)-(3).

As noted above, PHH conceded at the Hearing that all elements of confirmation have been met except for allowing post-petition arrears to be included in the Modified Plan. However, in its brief PHH relied on In re Cotton, 102 B.R. 891, 892 (Bankr. M.D. Ga. 1989) and In re Binder, 224 B.R. 483, 486 (Bankr. D. Colo. 1998), to argue the Modified Plan is not feasible because Debtor's initial schedules showed a $550 equity cushion, and now it is only $0.12, and that a 73-month plan is not reasonable. Dkt. No. 57.

PHH's reliance on Cotton is misplaced because the facts in Cotton are distinguishable. In Cotton, the debtor purchased a property post-petition and assumed responsibility for making payments on the security deed, without notice to the trustee. 102 B.R. at 891. The court's consideration of the proposed modified plan related to allowing a cure of post-petition arrears of a mortgage that was not an obligation on the petition date. See id. at 892-93. In this case, the mortgage obligation existed on the Petition Date. Finally, the Cotton court analyzed inclusion of post-petition arrears in the modified plan only under section 1329 – it did not consider section 1322. Finally, to the extent that facts of Cotton are applicable, the Court notes that the Eleventh Circuit effectively overruled Cotton by deciding Hoggle.

In Binder, the court acknowledged such a modification is not precluded under the Bankruptcy Code, but rather denied the modified plan because it did not comply with "original confirmation requirements" of being feasible and over a reasonable period of time pursuant to section 1329. Binder, 224 B.R. at 488. The Binder court found extending the plan from 36 months to 60 months problematic because of the debtor's limited finances. Id. Specifically, the Binder court found a 52-month extension to be an "extraordinary long period of time" and debtor's

---

[5] The pay-out to PHH for pre-petition arrears remains the same: $16,549.62 to be paid within the plan. The Modified Plan also proposes that regular monthly payments of $1,201.19 be paid to PHH outside the plan.

6

financials significantly underestimated and unrealistic as the debtor had a very tight budget, with no cushion, and was directing car payments to the modified plan payments. Id. at 488-89 ("The Debtor's financial resources are simply too limited and unpredictable to make the proposed modification feasible or to justify cure of the existing arrearage over the next 52 months.").

The facts here are not as unpredictable. Although the Modified Plan extends the payment period by 43 months,[6] Debtor's amended schedules show present and future ability to make such payments. Even though the current disposable income is small, it is positive, and Debtor's uncontested certification is that her household income is likely to increase. Debtor also eliminated or reduced certain expenses and authorized a wage order to make direct payments to the Trustee and PHH. Moreover, PHH conceded that the Modified Plan is feasible at the Hearing. Finally, the Court notes that courts this Circuit have determined that feasibility is not a heavy burden. In In re Bernardes, 267 B.R. 690, 695 (Bankr. D.N.J. 2001), the court stated "[w]hile the feasibility requirement is not rigorous . . . the plan proponent must, at minimum, demonstrate that the Debtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan." Id. (citing In re Blackerby, 208 B.R. 136, 144 (Bankr. E.D. Pa.1997)). Therefore, to the extent this decision is at odds with Binder, the Court does not agree with that court's stringent feasibility requirements. Thus, Debtor has satisfied the feasibility requirement.

Therefore, since Debtor's modification request is in accordance with pertinent sections of 1325 and 1329(a), the Court now turns to whether the requested modification conforms with section 1322.[7]

---

[6] At the Hearing, Debtor's counsel noted that the Modified Plan would extend payments by 44 months, not 67 months as stated by PHH, for a total of 73 months. Dkt. No. 44.

[7] Section 1329(b) requires the modification conform with section 1322(a) and (b).

7

B.  Post-Petition Arrears May be Included in the Modified Plan

Courts are split on the interpretation of section 1322(b) when considering whether a debtor may modify a Chapter 13 Plan to include post-petition arrears pursuant to section 1329. Mendoza, 111 F.3d at 1268. Section 1322(b) provides, in pertinent part, that a plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
> * * *
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the <u>curing of any default within a reasonable time</u> and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b) (emphasis added).

Courts adopting a plain meaning reading of section 1322 have concluded that curing post-petition arrears is permissible. See Hoggle, 12 F.3d 1008; Mendoza, 111 F.3d at 1268 (finding the Eleventh Circuit's decision in Hoggle "better reasoned and persuasive" than decisions reaching the opposite outcome). Specifically, these courts analyzed the plain meaning of section 1322(b)(5) to "expressly authoriz[e]" a timely cure for <u>any</u> default, whether it falls within the pre-petition or post-petition period and "notwithstanding § 1322(b)(2) anti-modification language." Hoggle, 12 F.3d at 1010; Mendoza, 111 F.3d at 1268. This approach emphasizes Congress's omission of any limiting language, such as language curing only pre-petition defaults, within subsection (b)(5). Hoggle, 12 F.3d at 1010 ("The omission is significant."). Therefore, both Hoggle and Mendoza concluded the plain meaning of section 1322(b)(5) allows post-petition arrears to be cured under a modified plan. Id.; Mendoza, 111 F.3d at 1265.

In Hoggle, the debtors failed to make confirmed plan mortgage payments and the secured creditor sought stay relief. Id. at 1009. On appeal, the Eleventh Circuit asked, "whether the district court has authority to modify a confirmed Chapter 13 plan to allow the Debtor to cure a

8

postconfirmation default with reference to a secured claim on the Debtor's house." Id. After construing the plain meaning, legislative intent, legislative history of sections 1322 and 1329, and underlying Chapter 13 principles, the Eleventh Circuit found modified plans may include post-petition arrears. Id. at 1012.

Similarly, in Mendoza the debtor failed to make plan payments after losing her job and suffering an illness, resulting in post-petition mortgage arrears, and the secured creditor filed a motion for stay relief. Mendoza, 111 F.3d at 1266. The bankruptcy court ordered the debtor to pay the secured creditor post-petition arrears directly and denied her modified plan, and the district court affirmed. Id. In relying on the "persuasive" decision in Hoggle, the Fifth Circuit reversed, finding section 1322 of the Bankruptcy Code allowed post-petition arrears to be cured through a modified plan. Id. at 1268-69.

Furthermore, as Hoggle noted, the plain meaning approach is "consistent" with legislative intent, legislative history,[8] and underlying principles of Chapter 13 to provide for flexible payment plans and to provide homeowners "continuing rights to cure default and preserve their primary assets" – all of which supports the modification proposed here by the Debtor. Hoggle, 12 F.3d at 1010 ("Accordingly, permitting cure of postconfirmation defaults best accords with Congressional intent to permit homeowners to utilize its flexible provisions for debt relief without sacrificing their homes."); Mendoza, 111 F.3d at 1269. To rule otherwise, the Hoggle court said, would create a rigid default, contrary to the flexible payment purpose of Chapter 13. Hoggle, 12 F.3d at 1012.

Additionally, the legislative history of section 1329 allows for modification when changed circumstances "unforeseen at the time of confirmation" occur. Id. at 1011 ("The House Report suggests that modification is permissible where problems such as 'natural disaster a long-term layoff, or family illness . . .' prevent compliance with the original plan."). "Thus, the general

---

[8] "The Senate Report likewise states that under § 1322(b)(5), a Chapter 13 plan may cure 'any default.'" Hoggle, 12 F.3d at 1010-11 (citing S. Rep No. 95, 989, 95th Cong., 2d Sess. 141 (1978)).

9

legislative intent surrounding Chapter 13 as well as specific legislative history relating to sections 1322(b)(5) and 1329 suggest that defaults, either preconfirmation or postconfirmation, may be cured under appropriate circumstances." Id.

In both Mendoza and Hoggle, the courts addressed arguments made against including post-petition arrears in a modified plan. In Mendoza, the Fifth Circuit noted that some courts have adopted a restrictive interpretation of the Bankruptcy Code to preclude post-petition arrears in a modified plan. See, e.g., In re Nicholson, 70 B.R. 398 (Bankr. D. Colo. 1987). These courts analyzed sections 1322(b)(2) and 1322(b)(5) to apply only to "prepetition defaults within a reasonable time." Mendoza, 111 F.3d at 1268 (citing Nicholson, 70 B.R. at 401 ("Pursuant to the provisions of 11 U.S.C. § 1322(b)(2) and (5), a Chapter 13 plan may not modify the rights of a creditor holding a claim secured only by mortgage on the debtor's principal residence except to cure pre-petition defaults within a reasonable time.")). However, the Fifth Circuit found no distinction in the Bankruptcy Code, stating, "neither section distinguishes expressly or otherwise between prepetition and postpetition arrearages." Mendoza, 111 F.3d at 1268.

In Hoggle, the Eleventh Circuit addressed the secured creditor's argument that the modified provision including postconfirmation defaults would not have been permissible in an original plan pursuant to section 1322, "because an original plan logically could not provide for curing postconfirmation default," and therefore requirements of section 1329 were not satisfied. Hoggle, 12 F.3d at 1010-11. The Eleventh Circuit dismissed that argument stating, "[w]e see no logical reason why an original plan could not provide for curing of postconfirmation defaults." Hoggle, 12 F.3d at 1011.

Furthermore, instances where preclusion of modification are appropriate are when the modification would alter the mortgagee's rights. Id. at 1267 (citing Nobelman v. American Savings Bank, 508 U.S. 324 (1993)). However, "[t]here is a distinction between modifying the rights of a

10

mortgagee where the debtor proposes to pay his mortgage at an interest rate lower than provided for in the mortgage, and modifying a plan of reorganization to include postpetition mortgage payments which are in arrears."[9] Mendoza, 111 F.3d at 1267. "Accordingly, [the secured creditor's] rights as a mortgagee and its security interest are not considered 'modified' under our reading of Nobelman." Id. at 1268. This distinction further supports confirming the Modified Plan.

Ultimately, to ensure the Code's integrity and to protect home lenders, bankruptcy courts prevent abusive modifications from being confirmed by also enforcing the requirements of section 1322(b)(5). Id. at 1012; see also 11 U.S.C § 1322(b)(5). Therefore, modifications must be "within a reasonable time" and "simultaneously maintain payments on the long term loan." Id.

Here, the facts are similar to both Hoggle and Mendoza: Debtor defaulted on post-petition mortgage payments as a result of her husband's unemployment and COVID-19 hurdles, and now seeks to cure post-petition defaults within the Modified Plan after a motion for relief from the automatic stay and related certifications of default were filed. Under the Hoggle-Mendoza plain meaning approach, this Court may – pursuant to section 1322(b)(5) – confirm the Modified Plan which includes payment of post-petition arrears. The Mendoza and Hoggle decisions are more persuasive than those of courts adopting a restrictive reading of the Code and therefore this Court concludes that § 1322(b)(5) makes no distinction between a pre-petition default and a post-petition default. See Mendoza, 111 F.3d at 1268. Congress's omission of restrictive language in section 1322(b)(5), the legislative history, and the underlying principles of Chapter 13 all further support this approach.

---

[9] The Mendoza court distinguished modification of mortgagee rights and modification of a plan. The former is precluded as it pertains to "rights" such as "(1) the right to repayment of the principal in monthly installments over a fixed term at a specified interest rate, (2) the right to retain the lien until the debt is paid off, (3) the right to accelerate the loan upon default and proceed to foreclosure and recover resulting deficiency." Mendoza, 111 F.3d at 1267 (citing Nobelman, 508 U.S. at 329).

11

C.  A 73-Month Plan is Reasonable

The Court must also consider whether extending the length of the plan to 73 months is reasonable. Congress's recent implementation of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act of 2020[10] directs a plan of this length may be reasonable. Under the CARES Act, debtors who experience "a material financial hardship due, directly or indirectly" from COVID-19 may extend the length of a Chapter 13 plan up to total of 84 months. See 11 U.S.C. § 1329(d)(2). The CARES Act was extended by the COVID-19 Bankruptcy Relief Extension Act of 2021, which extends the effective period of the CARES Act to March 27, 2022.[11] Congress's enactment of the CARES Act implemented changes to the Bankruptcy Code in response to economic fallout from the pandemic, deeming it this country's largest economic relief bill, and the extension provides those seeking bankruptcy protection a "smoother" process as pandemic consequences continue.[12] By allowing a plan payment period of up to 84 months, Congress effectively determined that amount of time is presumptively reasonable when a debtor has been affected by the COVID-19 pandemic. Here, Debtor's uncontested certification states that her husband has not maintained employment in the food service industry since the onset of the pandemic and his only income is unemployment. Dkt. No. 45. Debtor explains that she initially used COVID-19 stimulus funds to make mortgage and Trustee payments, but when family members fell sick during the pandemic, such funds were redirected. Dkt. No. 53. These hardships appear to be the exact circumstances Congress intended the CARES Act to address.

The Court concludes Debtor's financial hardship is a result of COVID-19, and the requested extension of payments to a total of 73 months being within the CARES Act limit. Therefore, the Modified Plan meets the reasonableness requirement. Curing post-petition defaults

---

[10] Pub. L. No. 116-136 (2020).
[11] Pub. L. No. 117-5 (2020).
[12] Daniel Stolz, President Biden Signs the "COVID-19 Bankruptcy Relief Extension Act", JD Supra (Mar. 31, 2021), https://www.jdsupra.com/legalnews/president-biden-signs-the-covid-19-6092683/.

resulting from an unforeseen global pandemic aligns with the legislative intent of section 1329 allowing for changed circumstances. See Hoggle, 12 F.3d at 1011. Thus, under the circumstances and the facts of this case, curing the post-petition arrears within the time limits of the CARES Act is reasonable and the Modified Plan shall be confirmed.

### D.  Automatic Stay

Because the Modified Plan will be confirmed, the Court will not grant stay relief. However, the Court will condition the stay on Debtor remaining current on post-petition plan and mortgage payments in accordance with the Modified Plan. If Debtor defaults on either payment, PHH may file a new certification of default seeking stay relief.

### IV.  Conclusion

The Debtor's Modified Plan will be confirmed. Pursuant to section 1322 of the Bankruptcy Code, a debtor may include post-petition arrears into a modified plan. Because Debtor meets the statutory requirements of sections 1329, 1322 and 1325 of the Bankruptcy Code, the Modified Plan shall be confirmed and the automatic stay will remain in place with the conditions set forth above.

Dated: June 24, 2021

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE